COMMONWEALTH *vs.* AUGUST BECK.

SAME *vs.* JOHN F. MURPHY.

SAME *vs.* EDMUND MURPHY.

SAME *vs.* JOHN MEEHAN.

SAME *vs.* EUGENE MURPHY.

SAME *vs.* FRANCIS J. BOYLE.

Worcester.    October 3, 1906. — January 4, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Municipal Corporations,* By-laws and ordinances.  *License.  Express Company.*

Under R. L. c. 25, § 24, a city has power to pass an ordinance requiring a license
    from the board of aldermen for every wagon or other vehicle used for the con-
    veyance of goods for hire from place to place within the city, which applies
    to wagons used in the express business to transport from the railroad station to
    the persons in the city to whom they are addressed goods sent by express
    from other cities.

SIX COMPLAINTS for violation of the so called hackney
carriage ordinance of the city of Fitchburg which is quoted in
the opinion.

In the Superior Court the cases were submitted to *Wait,* J.
upon an agreed statement of facts.  The defendants requested
the judge to rule that upon the agreed facts, the substance of
which is stated in the opinion, they could not be convicted.
The judge refused to make this ruling, and thereupon the de-
fendants severally pleaded guilty to the complaints against
them, and alleged exceptions to the refusal of the judge to
rule as requested.

The case was submitted on briefs.

*D. I. Walsh & T. L. Walsh,* for the defendants.

*G. S. Taft,* District Attorney, *& E. I. Morgan,* Assistant
District Attorney, for the Commonwealth.

HAMMOND, J.   Each of these six cases is a complaint for a
violation of the following ordinance of the city of Fitchburg:
" Sect. 3.   No person shall set up, use or drive, any hackney
carriage, wagon, dray or other vehicle, whether on wheels or
runners, for the conveyance from place to place within the city,

for hire, of any goods, wares, merchandise, furniture, or any other article of transportation, without a license for such wagon, dray or vehicle, from the board of aldermen, or some person by them designated to issue licenses."

The defendants are all residents of Fitchburg, three of them being respectively proprietors of different express companies so called, and the other three being employed respectively as drivers by the proprietors. The express companies all had offices in Fitchburg, and two of them also had an office in Boston, while the third also had an office in Worcester. The business of the companies was transacted as follows: Orders were taken at the various offices or elsewhere for the purchase of merchandise in other places than Fitchburg, both within and without the Commonwealth. At the time of receiving the order they usually received a cash payment to cover the cost of the goods to be bought, and upon delivery of the goods by these companies to the persons for whom the order was taken they received a cash payment to cover express charges or the cost of transportation. The merchandise so ordered was sent from the shipping point, usually Boston, by freight over the Boston and Maine Railroad to Fitchburg. All consignments to each company on each day (which consisted of various single packages addressed to various persons in Fitchburg, and directed in care of one or the other of the express companies) were invoiced and billed by the Boston and Maine Railroad to the express company in whose care it was directed. The express companies paid the freight transportation and their agents receipted for the goods at the Fitchburg freight depot. The packages were then delivered to the various persons to whom they were addressed in Fitchburg by the teams of the express companies, and those teams were driven at various times over public ways in the city of Fitchburg by each of the six defendants, and no licenses had been issued to any of the six defendants, or for any of the conveyances used in their business. The freight charges, which were paid by the companies at the hundred weight rate, varied from less than five cents to twenty cents for a single package, while the companies collected from the purchasers of the goods for transportation by the railroad and delivery by wagon from fifteen cents to fifty cents for each package.

The defendants contend that they engaged in an express business which is not local but "interurban," and that "the power to establish an ordinance to compel persons engaging in the express business to obtain a license for their vehicles, applies only to those whose business is purely local."

The authority to pass ordinances for the regulation of carriages is found in R. L. c. 25, § 24, which provides that "a city or town may make ordinances or by-laws, or the mayor and aldermen or the selectmen may make rules and orders, for the regulation of carriages and vehicles used therein, however propelled, with penalties for the violation thereof not exceeding twenty dollars for one offence; and may annually receive one dollar for each license granted to a person to set up and use any carriage or vehicle therein. Such rules shall not take effect until they have been published at least one week in a newspaper published in the city, town or county."

The defendants are certainly within the general language of the ordinance. They are setting up, using and driving wagons "for the conveyance from place to place within the city, for hire, of . . . goods . . . [and] . . . merchandise." There can be no doubt of that. The only place from which the goods are taken to be placed in the wagons is the railroad station in the city, and the various places where they are taken from the wagons are also in the city, and are nowhere else. In a word, these carriages, so far as they are used at all in this business, are used exclusively in the city. The statute upon its face seems broad enough to cover a vehicle so used, but the defendants insist that there is an implied exception as above stated to an express business between two or more cities or towns, and in support of their contention they rely upon *Commonwealth* v. *Stodder*, 2 Cush. 562. In so far as the language of Dewey, J., in that case refers to such a distinction it is a mere dictum, for the case, which arose under St. 1847, c. 224, went off on an entirely different ground. After the decision in that case, St. 1850, c. 275, amending St. 1847, c. 224, was passed, and both statutes were consolidated and re-enacted in Gen. Sts. c. 19, § 14, Pub. Sts. c. 28, § 25, and R. L. c. 25, § 24. Upon an examination of these statutes we are of opinion that notwithstanding the dictum in *Commonwealth* v. *Stodder*, the fact that these

teams are used to complete the carriage of goods in the manner described is not sufficient to exempt them from the statute. The ordinance is within the authority covered by the statute and is valid.

*Exceptions overruled.*